UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No.  2:14-CR-00293-KJM |
| Plaintiff, | |
| v. | ORDER |
| LLOYD BRADLEY, | |
| Defendant. | |

Defendant brings an emergency motion seeking compassionate release and a reduction of his sentence to time served under 18 U.S.C. § 3582(c)(1)(A)(i).  Defendant makes this motion due to the health risks he says the coronavirus pandemic ("COVID-19") poses to him, as someone who is in custody with his health issues.  Having reviewed the parties' briefing, the court finds that compelling reasons exist for defendant's release and so the motion is GRANTED.[1]

---

[1] The court notes defendant filed a Notice of Supplemental Authorities on July 4, 2020. *See* ECF No. 68.  While the court has reviewed the Notice it does not change the court's conclusion here.  To the extent the Notice provides information relevant to the court's analysis, the court indicates as much in a footnote.

1

1    I.        BACKGROUND

2             A.        COVID-19 Generally

3                      It cannot reasonably be disputed that "[d]ue to the novel coronavirus pandemic, we

4    are in extraordinary times."  *United States v. Daniels*, No. 19-CR-00709-LHK (NC), 2020 WL

5    1815342, at *2 (N.D. Cal. Apr. 9, 2020) (internal quotation marks and citation omitted).  The

6    crisis triggered by the virus is global, leading to many emergency declarations, including a

7    presidentially-declared national emergency.  *See* Proclamation No. 9994, 85 Fed. Reg. 15,337

8    (Mar. 13, 2020).

9                      Predictably, as the coronavirus has spread throughout the United States, it has

10   reached jails and correctional facilities as well.  *See, e.g., United States v. Daniels*, No. 19-CR-

11   00709-LHK (NC), 2020 WL 1815342, at *3 (N.D. Cal. Apr. 9, 2020) (citing Timothy Williams,

12   et al., *Jails are Petri Dishes*, N.Y. Times (Mar. 31, 2020)[2]).  As of June 23, 2020 the federal

13   Bureau of Prisons (BOP) reported 1,349 federal inmates and 163 BOP staff currently diagnosed

14   with the virus, as well as 87 inmate deaths and 1 BOP staff death.[3]  Responding to the risks in the

15   federal prisons, Attorney General William Barr has issued two memoranda to the BOP Director,

16   directing BOP to maximize the release of inmates to home confinement at institutions most

17   affected by COVID-19, by making individualized determinations balancing inmates'

18   vulnerability to infection and public safety.  *See* Mem. from U.S. Att'y Gen. William Barr to

19   Director of Bureau of Prisons (April 3, 2020) (second memorandum supplementing original after

20   passage of CARES Act).[4]

21            B.        Defendant's Circumstances

22                      Defendant Lloyd Bradley, who is 40 years old, is currently serving his sentence at

23   Sheridan Correctional Institution in Oregon ("FCI Sheridan"), following his guilty plea to a single

24   charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Mot.,

25

26            [2] https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html.

27            [3] As have other courts, this court takes judicial notice of the information presented by the
     BOP at https://www.bop.gov/coronavirus/.  *See Daniels*, 2020 WL 1815342, at *3.

28            [4] Available at https://www.justice.gov/file/1266661/download.

1    ECF No. 59, at 8; Plea Agreement, ECF No. 21.  On September 16, 2015, this court sentenced

2    defendant to 96 months imprisonment and 36 months supervised release.  Sentencing Minutes,

3    ECF No. 32.  Defendant's current release date is June 30, 2021.  Mot. at 8; *see also* Opp'n Ex. 1,

4    ECF No. 65-1 (BOP inmate data for defendant).

5           On May 19, 2020, defendant filed the instant motion to reduce his sentence to time

6    served.  *Id.*  He also filed a notice of a request to seal his medical records, which he submitted to

7    the court as part of his motion.  ECF No. 60.  The government has opposed defendant's motion to

8    reduce his sentence, *see* Opp'n, ECF No. 65, and requested to seal some of the documents it

9    presents in support of its motion, ECF No. 66.  Defendant filed a reply to the government's

10   opposition.  *See* Reply, ECF No. 67.  The court resolves defendant's motion here.

11          C.       LEGAL STANDARD

12          Defendant brings his motion for release under 18 U.S.C. § 3582(c)(1)(A)(i), which

13   allows a court to modify a sentence under certain circumstances.  Under the current version of the

14   statute, a motion for modification may be made by either the Director of the Bureau of Prisons or

15   by a defendant "after the defendant has fully exhausted all administrative rights to appeal[.]" 18

16   U.S.C. § 3582(c)(1)(A).

17          In order to modify a sentence and grant compassionate release following

18   exhaustion, as relevant here, a district court engages in a two-step process.  First, it must consider

19   the familiar 18 U.S.C. § 3553(a) factors guiding the original sentencing, to the extent they remain

20   applicable at the time a motion is brought.  18 U.S.C. § 3582(c)(1)(A).  Second, the court must

21   find that "extraordinary and compelling reasons warrant such a reduction."  *Id.*  An alternative

22   provision provides for consideration of a motion by a defendant who is 70 years or older, and so

23   is not applicable here.  18 U.S.C. § 3582(c)(1)(A)(ii).

24          The statute further requires "that such a reduction is consistent with applicable

25   policy statements issued by the Sentencing Commission."  *Id.* § 3582(c)(1)(A).  In 2006, the

26   Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and

27   compelling reasons" to release a defendant from BOP custody, which was last amended

28   November 1, 2018.  *See* U.S.S.G. § 1B1.13.  Since passage in December 2018 of the First Step

Act (FSA),[5] which amended § 3582 to allow a defendant to file a motion for compassionate release directly with the court, district courts have disagreed whether U.S.S.G. § 1B1.13 remains binding.  A number of district courts nationwide have determined that the policy statement provision "no longer fits with the statute," *United States v. Cantu*, 423 F. Supp. 3d 345, 351 (S.D. Tex. 2019), because the statement has not been amended since the First Step Act passed to reflect that both defendants and the BOP may move for compassionate release.  *See United States v. Allen*, No. 2:17-CR-0229-TOR-12, 2019 WL 6529113, at *2 (E.D. Wash. Dec. 4, 2019); *United States v. Willingham*, No. CR113-010, 2019 WL 6733028, at *2 (S.D. Ga. Dec. 10, 2019) (noting "[i]n at least four judicial districts, courts have determined that the First Step Act signaled an intent from Congress that district courts may now consider whether extraordinary and compelling reasons for compassionate release exist other than those delineated in U.S.S.G. § 1B1.13 n.1" (citations omitted)).  Many courts in this circuit have nonetheless "turned to U.S.S.G. § 1B1.13 to provide guidance on the 'extraordinary and compelling reasons' that may warrant a reduction in sentence." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 n.2 (D. Idaho Apr. 7, 2020) (quoting *United States v. Gonzalez*, No. 2:18-CR-0232-TOR-15, 2020 WL 1536155, at *2 (E.D. Wash. March 31, 2020)); *see also Riley v. United States*, No. C19-1522 JLR, 2020 WL 1819838, at *8 (W.D. Wash. Apr. 10, 2020) ("In the absence of contrary controlling authority, and given the limited statutory exceptions to the general rule of the finality of judgments, this court will continue to follow the guidance of the Sentencing Commission's policy statement limiting the scope of "extraordinary and compelling reasons" that warrant compassionate release under § 3582(c)(1)." (citing *Dillon v. United States*, 560 U.S. 817, 827 (2010))), *appeal filed*, No. 20-35334 (April 13, 2020).

However, there is also a strong contingent of cases in which the presiding judge has concluded the guidelines are no longer limiting, and the court has discretion to define what constitutes an "extraordinary and compelling" reason. *See, e.g.*, *United States v. Rodriguez*, No. 17-cr-00021-WHO-1, 2019 WL 6311388, at *7 (N.D. Cal. Nov. 25, 2019) ("This court follows

---

[5] Pub. L. No. 115-391, 132 Stat. 5194 (2018).

the growing number of district courts that have concluded that, in the absence of applicable policy

statements, courts can determine whether any extraordinary and compelling reasons other than

those delineated in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C) warrant compassionate release."); *United*

*States v. Chan*, No. 96-cr-00094-JSW-13, 2020 WL 1527895, at *4–5 (N.D. Cal. March 31,

2020) (noting split in authority and following *Rodriguez*); *United States v. Parker*, No. 2:98-CR-

00749-CAS-1, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases finding

U.S.S.G. § 1B1.13 is no longer limiting but considering policy statement as guidance).

       In resolving the instant motion, this court considers the Sentencing Commission's

policy statement as guidance, without determining whether it is binding in this context.  The court

notes as relevant here that, in addition to listing possible "extraordinary and compelling reasons,"

section 1B1.13 "imposes an additional consideration of whether the defendant is a danger to the

safety of any other person or to the community."  *United States v. Numann*, No. 3:16-CR-00025-

TMB, 2020 WL 1977117, at *2 (D. Alaska Apr. 24, 2020) (citing U.S.S.G. § 1B1.13(2)).

II.    <u>DISCUSSION</u>

    A.    <u>Exhaustion</u>

       Generally, exhaustion requires defendant to seek compassionate release with the

BOP, exhaust all appeals or show that at least 30 days have lapsed and BOP has failed to respond

to defendant's request, whichever is earlier.[6]  *See United States v. Miller*, No. 2:16-CR-00269-

BLW, 2020 WL 113349, at *2 (D. Idaho Jan. 8, 2020).  As this court has noted previously, the

statutory text providing for a 30 day period in § 3582(c)(1) is not a model of clarity.  *See United*

*States v. Johnson*, No. 2:15-CR-00003-KJM, 2020 WL 2307306, at *4 (E.D. Cal. May 8, 2020)

(citing *United States v. Weidenhamer*, No. CR1601072001 PHX ROS, 2019 WL 6050264, at *2

(D. Ariz. Nov. 8, 2019)).  However, the court need not resolve any question of statutory

construction here.

---

     [6] 18 U.S.C. § 3582(c)(1)(A) states defendant may make a motion "after the defendant has
fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the
warden of the defendant's facility, whichever is earlier."

1    In this case, defendant, through counsel, emailed a request for home confinement

2    under the CARES Act and for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) to the

3    warden of FCI Sheridan.  Ex. 1, ECF No. 59-1 (copy of defendant's email request to warden).

4    Defendant emailed this request on April 24, 2020, and submitted a corrected supplemental letter

5    on May 5, 2020.  *Id.*  Defense counsel argued defendant's medical risk, lack of serious

6    disciplinary violations, and time remaining on his sentence make him a "good candidate for

7    release to home confinement for the remainder of his sentence," *id*. at 4; the supplemental letter

8    on May 5 advised the warden of defendant's verifiable release plan for home confinement at his

9    cousin's apartment, *id.* at 7.  As of June 1, 2020, defendant has not received a response from the

10   warden.  Reply at 3.

11   On May 19, 2020, defendant filed the instant motion, in which he states he will

12   have satisfied the statute's exhaustion requirement on May 24—30 days after his request to the

13   warden.  Mot. at 9.  Defendant also argues the exhaustion requirement should be excused or

14   waived, but the court need not address this argument.  *Id.*  The government appears ultimately to

15   concede defendant has exhausted his administrative remedies.  In its opposition filed on May 27,

16   2020, the government at first argues defendant did not fully exhaust his administrative remedies

17   because he did not wait "30 days from the Warden's receipt of his request prior to filing the

18   instant motion."  Opp'n at 3.  The government then states more than 30 days have passed since

19   the warden received defendant's request on or about April 24, 2020 and defendant "satisf[ied] the

20   statutory requirement in 18 U.S.C. § 3582(c)(1)."  *Id.*

21   Without accepting the government's reading of the statute, *id.*, the court finds it is

22   undisputed defendant has met the exhaustion requirement and so proceeds to consider the merits

23   of the motion below.

24   B.    "Extraordinary and Compelling Reasons"

25   Defendant argues his health problems make him particularly susceptible to

26   developing serious complications from a COVID-19 infection, which is an "extraordinary and

27   compelling reason" that warrants compassionate release.  *See* Mot. at 16.  The government

28   counters that: (1) defendant has failed to show an extraordinary and compelling reason for his

6

1  release, given his prior criminal history, and (2) the sentencing factors of 18 U.S.C. § 3553(a) do

2  not support his release.  Opp'n at 11–14.

3                     1.    Evidence of Defendant's Health Risks

4          Defendant identifies his documented diabetes, hypertension and asthma as

5  "comorbidities" that put him "at very high risk for more severe complications from COVID-19."

6  Mot. at 17–18 (citing Ex. 2 ("Mot. Ex. 2"), ECF No. 59-2 at 9, 42, 46 (defendant's BOP medical

7  records documenting diabetes, hypertension, asthma and obesity)).  Defendant supports his

8  motion with verified medical records from the BOP, which he has submitted to the court with a

9  request to seal.  *See* Not. of Req. to Seal, ECF No. 60.[7]  He also provides the court with two

10  verified declarations from medical professionals, noting the severity of COVID-19 risks for

11  people with diabetes specifically, as well as the generalized risks COVID-19 poses in the prison

12  system.  Beyrer Decl., ECF No. 59-2; Edelman Decl., ECF No. 59-3. The medical records

13  confirm defendant has suffered from and received treatment for diabetes, hypertension and

14  asthma throughout his incarceration.  *See* Mot. Ex. 2 at 11 (discussing hypertension, diabetes), 44

15  (records from June 27, 2019: "Inmate Bradley is a newly diagnosed diabetic…Inmate has family

16  members with diabetes."), 47 ("Patient with asthma. Uses inhaler several times a week."), 48

17  (records from June 12, 2019: prescribing inmate an Albuterol Inhaler and noting his asthma,

18  hypertension, obesity, and type 2 diabetes), 74–78 (summarizing defendant's medications).

19  Defendant's presentence report also noted his treatment for asthma.  Presentence Investigation

20  Report, ECF No. 28 (sealed), at 19.

21          Factually, the government does not challenge whether defendant suffers from any

22  of the health conditions he identifies.  Opp'n at 12.  The government does, however, dispute the

23  severity of defendant's diabetes and hypertension, without addressing defendant's asthma.  *Id.*

24  While the government acknowledges defendant suffers from diabetes and that the Centers for

25  Disease Control and Prevention (CDC) has classified diabetes as a high-risk factor in the face of

26  COVID-19, the government notes defendant's records indicate "he is not taking any medications

27

---

28      [7] The court GRANTS defendant's request to seal Exhibit 2 and the court directs the Clerk to file this document under seal concurrently with this order.

and that he is controlling his diabetes with diet and exercise." Opp'n at 12 n.1 (citing Mot. Ex. 2 at 13). With respect to defendant's hypertension, the government points to defendant's suffering from benign primary hypertension, while "the CDC only recognizes 'pulmonary hypertension' as a high-risk factor for COVID-19 complication." Opp'n at 12 (citing CDC, *Coronavirus Disease 2019 (COVID-19)-People Who Are At Higher Risk*). Despite its attempts to diminish the effects and severity of defendant's conditions, the government ultimately appears to concede defendant's diabetes at least is a chronic health condition "potentially qualifying under the policy statement in light of the risk of infection of COVID-19." *Id.*

While the CDC does not expressly list benign primary hypertension as a specific risk factor for complications from COVID-19, defendant provides the court with other authorities demonstrating the risks associated with hypertension generally. Mot. at 14 (citing *United States v. Pinkerton*, No. 15-CR-30045-3, 2020 WL 2083968, at *5 (C.D. Ill. Apr. 30, 2020) ("The CDC has identified hypertension and diabetes as comorbidities that increase the likelihood of serious risk from COVID-19."); *United States v. Pabon*, No. 17-165-1, 2020 WL 2112265, at *8–9 (E.D. Pa. May 4, 2020) (citing a study of 5,700 patients with COVID-19, with 56.6% of those patients also suffering from hypertension)).[8] In addition, other courts have found one of the medications doctors have prescribed to treat defendant's hypertension "has been shown to 'increase [] [the] risk for COVID-19 infection.'" Reply at 4 (citing *United States v. Canale*, No. 17-CR-286, 2020 WL 1809287, at *1 (S.D.N.Y. Apr. 9, 2020). The court finds the record supports the conclusion that defendant is at heightened risk based on his hypertension diagnosis if he becomes infected with COVID-19.

In his reply, defendant also correctly points out the government fails to address his asthma. Reply at 4. The CDC identifies "moderate to severe asthma" and "diabetes" as likely risk factors for severe symptoms from COVID-19. CDC, *People Who Are at Higher Risk for*

---

[8] In his Notice of Supplemental Authorities, defendant represents that as of June 25, 2020, the CDC's COVID-19 guidelines now provide that "hypertension (high blood pressure) . . . may increase your risk of severe illness from COVID-19." ECF 68 at 2 & n.1.

*Severe Illness* (last updated May 14, 2020)[9] (listing as those at particular risk: "People of all ages with underlying medical conditions, particularly if not well controlled, including: . . . People with chronic lung disease or moderate to severe asthma"); *see also United States v. Hernandez*, No. 1:10-CR-249 AWI, 2020 WL 2745697, at *3 (E.D. Cal. May 27, 2020) ("There is no dispute that the CDC identifies asthma as a condition that increases the risk of serious complications from Covid 19.").

Defendant also argues persuasively that it is not any one of these conditions alone that creates a greater risk of his suffering severe illness from COVID-19; instead, it is the "particular danger" he faces given his combined conditions of diabetes, hypertension and asthma. Reply at 4. As other courts have found, suffering from the combination of these specific health conditions can provide an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Burrill*, No. 17-CR-00491-RS-1, 2020 WL 1846788, at *3 (N.D. Cal. Apr. 10, 2020) (reasoning 75-year old defendant unlikely to "recover" from his asthma, high blood pressure, and diabetes and has "effectively demonstrated a nexus between his medical conditions and the ongoing pandemic [. . .]"). Here as well, the court finds defendant's combination of serious health conditions weighs heavily in favor of a sentence reduction.

The court next turns to whether defendant's current placement warrants a sentence reduction.

### 2.   Defendant's Current Placement

The CDC's Guidance for Correctional & Detention Facilities notes that the circumstances in prisons present "unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors," with the observation that "[c]onsistent application of specific preparation, prevention, and management measures can help reduce the risk of transmission and severe disease from COVID-19." CDC, *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention*

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

1    *Facilities.*[10]  Some courts have concluded, not unreasonably, that "[t]he danger of COVID-19 to

2    high-risk individuals who are imprisoned is likely much greater than to those who are free to take

3    their own protective measures."  *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL

4    1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote omitted).  Because there is currently no cure for

5    COVID-19, the CDC recommends individuals with asthma and diabetes protect themselves from

6    the disease, by, *inter alia*: "keep[ing] space between yourself and others," "stay[ing] home," and

7    "[c]lean[ing] your hands often by washing with soap and water or using an alcohol-based

8    sanitizer."  The recommendations emphasize that "[k]eeping distance from others is especially

9    important for people who are at higher risk of getting very sick."  CDC, *How to Protect Yourself*

10    *& Others* (last updated April 24, 2020).[11]

11          The government argues that BOP's measures to prevent the spread of infection for

12    all inmates effectively protect inmates with defendant's conditions.  Opp'n at 4.  With citation to

13    a BOP document titled "Correcting Myths About BOP and COVID-19" and BOP's "Action

14    Plan," it represents that BOP medical staff check inmate temperatures at least once a day, provide

15    cloth masks to staff and inmates, and have provided cleaning supplies to all inmates.  *Id.* at 6.  In

16    addition, the government describes the BOP's multi-phased plan modifying operations, screening

17    procedures and internal inmate movements to stop the spread of the virus in line with CDC

18    guidance.  *Id.* at 4–6.  The government acknowledges that, as of the date of their filing, 1,747

19    federal inmates had confirmed positive test results and 3,232 inmates had recovered from

20    COVID-19.  *Id.* at 9.  It does not acknowledge the deaths of some of those infected.  The

21    government also notes there were zero inmates or BOP staff at defendant's facility, FCI Sheridan,

22    diagnosed with COVID-19 at the time it filed its brief.  *Id.* at 8.[12]

23

24

---

25       [10] https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html

26       [11] https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html

27       [12] In his Notice of Supplemental Authorities, defendant represents that as of July 4, 2020, there is one inmate at FCI Sheridan has "is confirmed to have contracted COVID-19."  ECF No.

28    68 at 2 & n.2.

1    Accepting the government's description of BOP's efforts to control the spread of

2    COVID-19, the record before the court does not indicate FCI Sheridan has taken specific efforts

3    to protect inmates, including defendant, who have multiple health conditions creating greater risk

4    of death or serious illness.  That there were no confirmed cases of COVID-19 at FCI Sheridan

5    may simply be an indication of how much testing had been conducted or not; defendant is correct

6    that "zero confirmed cases is not the same as zero COVID-19 cases."  Reply at 7 (quoting *United*

7    *States v. Feucht*, No. 11-CR-60025, 2020 WL 2781600, at *3 (S.D. Fla. May 28, 2020) (citation

8    omitted)).  Moreover, the court notes that in a filing in another case, the government reported that

9    eight BOP staff members had tested positive for COVID-19 at FCI Sheridan, as of May 26, 2020.

10   *See United States v. Miles*, No. 2:17-CR-00127-KJM, dkt. no. 63 at 14 & dkt. no. 66 at 16 (E.D.

11   Cal. Jun. 1, 2020).

12   Regardless of the number of COVID-19 cases at any given time, "infection can

13   spread with a deadly speed." *United States v. Etzel*, No. 6:17-CR-0001, 2020 WL 2096423, at *4

14   (D. Or. May 1, 2020) ("For example, some other BOP institutions, such as FCI Terminal Island

15   have seen outbreaks grow into hundreds of confirmed cases in a matter of weeks.") (citations

16   omitted).  As other courts have found, inmates with multiple health conditions can demonstrate an

17   "extraordinary and compelling reason" warranting a reduction, even with no confirmed cases in

18   the institution where they are housed.  *Id.* (noting defendant's hypertension, Hepatitis C, coronary

19   and cardiac issues, as well as chronic bronchitis).

20   Here defendant's hypertension, asthma and diabetes put him at high risk of

21   suffering serious, possibly life-threatening, medical consequences if he contracts COVID-19.

22   Given the public health landscape, the likelihood of COVID-19 infections spreading through FCI

23   Sheridan and the absence of comprehensive information on BOP's COVID-19 management plan

24   for inmates with defendant's comorbidity factors, the court finds defendant has demonstrated an

25   "extraordinary and compelling reason" to warrant a sentence reduction.

26                3.    Sentencing Guidelines

27   The Sentencing Guidelines advise that "the court should consider the sentencing

28   factors set forth in 18 U.S.C. § 3553(a) when deciding a motion for compassionate release, and

11

1   that the Court should not grant a sentence reduction if the defendant poses a risk of danger to the

2   community, as defined in the Bail Reform Act." *Esparza*, 2020 WL 1536155, at *3 (citing

3   U.S.S.G. § 1B1.13); *see also* 18 U.S.C. § 3582(c)(1)(A).

4          The government argues defendant's record precludes the court from finding he is

5   not a danger to the community. Opp'n at 13. To support this claim, the government characterizes

6   defendant as a "career-long dangerous criminal" with previous convictions for felony drug, theft

7   and robbery crimes. *Id.* (citing PSR ¶ 23). The government also calls attention to the instant

8   offense, in which defendant possessed a firearm, after his previous felony convictions barred him

9   from doing so. *Id.*

10         Defendant has already served well more than half of his original sentence;

11  reducing his sentence would not constitute a request for an "abrupt departure from [defendant's]

12  current sentence." Opp'n at 14 (citing *United States v. Applewhite*, No. 08-CR-60037, 2020 WL

13  137452, at *2 (D. Or. Jan. 13, 2020)). As defendant notes, he has served 68 months of a 96-

14  month sentence and earned 270 days of good time credits; he has effectively served 77 months, or

15  two-thirds of his total sentence. Reply at 8 (citing Opp'n Ex. 1 at 4 (computation of sentencing

16  data for defendant)). Second, defendant is already eligible for home confinement as of December

17  30, 2020, and has proposed serving the remainder of his sentence at his cousin's home in Vallejo,

18  California. Opp'n Ex. 1 at 3; Mot. at 23. The requested reduction to his prison term amounts to

19  seven months. Third, while defendant's criminal history does include convictions for violent

20  crimes, with his most recent conviction for robbery in 2010, PSR ¶¶ 6–7, 37–39, the instant

21  offense, committed while defendant was on parole for the 2010 conviction, was not itself a crime

22  of violence. Other courts have found similar sentence reductions appropriate in felon in

23  possession cases. *Etzel*, 2020 WL 2096423, at *4 ("The effective 66-month sentence, over 70%

24  of his total sentence, adequately expresses the seriousness of the offense [possession of a firearm

25  and possession of methamphetamine], deters criminal conduct, and protects the public under §

26  3553(a)."). Fourth, and importantly, defendant has made considerable efforts to rehabilitate

27  himself while incarcerated. He obtained his General Education Development (G.E.D.) degree,

28

12

1  completed numerous anger-management and self-improvement classes, and participated in a drug

2  abuse program.  Mot. at 23; Reply at 8.

3       In reviewing the relevant factors under 18 U.S.C. § 3553(a), the court finds no

4  factor or combination of factors precludes the requested remedy here, particularly given

5  defendant's solid evidence of impressive rehabilitation while incarcerated, *see Pepper v. United*

6  *States*, 562 U.S. 476, 491 (2011) ("[E]vidence of postsentencing rehabilitation may be highly

7  relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to

8  consider at sentencing.").  In light of the foregoing, the court also finds defendant does not

9  present a current risk of danger to the community as contemplated by 18 U.S.C. § 3142(g).

10 III.   <u>CONCLUSION</u>

11      Accordingly, the court GRANTS defendant's emergency motion for reduction of

12 sentence, ECF No. 59.

13      The court modifies defendant's sentence of incarceration to time served, to be

14 followed by the 36-month term of supervised release previously imposed.  A special condition of

15 supervised release is added whereby defendant shall be subject to home confinement as directed

16 by the probation officer, with defendant responsible for the attendant costs of location monitoring.

17 In addition to this and the other previously imposed court-imposed conditions of release,

18 defendant's movement in the community shall be restricted as follows, with all activities subject

19 to pre-approval by the probation officer: defendant shall be restricted to his cousin's residence at

20 all times except for employment, education, religious services, medical, substance abuse or

21 mental health treatment, attorney visits, court appearances, court-ordered obligations, or other

22 activities as pre-approved by the probation officer.

23      Defendant's request to seal Exhibit 2 to his motion and the government's request

24 to seal Exhibit 2 to its opposition are GRANTED, as both documents contain sensitive medical

25 records in which defendant has a compelling privacy interest.  *See* Not. of Req. to Seal, ECF No.

26 60; Not. of Req. to Seal, ECF No. 62; *see also Johnsen v. Tambe*, No. 19-141-TSZ-MLP, 2019

27 WL 4014256, at *2 (W.D. Wash. Aug. 26, 2019) (finding plaintiff's "privacy interest in his own

28 medical  records to be a sufficiently compelling reason to seal the medical records themselves").

1   The Clerk is hereby directed to file Exhibit 2 to defendant's motion and Exhibit 2 to the

2   government's opposition on the docket, under seal.

3          This order resolves ECF Nos. 59, 60, 62.

4          IT IS SO ORDERED.

5   DATED:  July 6, 2020.

6

7   _____
    CHIEF UNITED STATES DISTRICT JUDGE
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14